ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| **PROFESSIONAL ASPHALT, LLC.**<br><br>Recurrente<br><br>v.<br><br>**MUNICIPIO DE CATAÑO**<br><br>Recurrido<br><br>v.<br><br>**MIGUELITO ASPHALT, INC.**<br><br>Licitador agraciado | KLRA202400660 | **REVISIÓN** procedente del Municipio Autónomo de Cataño<br><br>Subasta Núm: 17, SERIE 2024-2024<br><br>Sobre: Proyecto Adquisición de Asfalto, Repavimentación y Escarificación |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

Cintrón Cintrón, Jueza Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 19 de diciembre de 2024.

Comparece ante este Tribunal de Apelaciones, Professional Asphalt, LLC., (Professional Asphalt o parte recurrente) y solicita que revisemos la *Adjudicación Enmendada* de la subasta Núm. 17, serie 2024-2025, sobre adquisición de asfalto, repavimentación y escarificación, emitida el 22 de noviembre de 2024, por la Junta de Subastas del Municipio Autónomo de Cataño (Junta de Subastas). Mediante la misma, la Junta de Subastas adjudicó la *buena pro* a favor de Miguelito Asphalt, Inc. (Miguelito Asphalt).

Ahora bien, a poco examinar el dictamen recurrido, nos percatamos que este no cumplió con las obligaciones que el debido proceso de ley exige para toda notificación de adjudicación de subasta. En vista de ello, una vez más, nos vemos precisados a devolver el caso a la Junta de Subastas para que dicho organismo emita y notifique concluyentemente su dictamen, a tenor con los

requisitos legales correspondientes a los cuales se le ha hecho referencia en ocasiones previas.

**I.**

El 2 de mayo de 2024, el Municipio Autónomo de Cataño (Municipio) publicó el Aviso para la Subasta Núm. 17-2024-2025 sobre adquisición de asfalto, repavimentación y escarificación. Los siguientes licitadores sometieron sus respectivas propuestas: Puerto Rico Asphalt, LLC., Super Asphalt Pavement, Corp., PR Disposal 4 Contractor, Professional Asphalt LLC y Miguelito Asphalt, Inc. El aviso de la subasta constaba de la siguiente información: (1) Presentación de las Propuestas; (2) Normas para la subasta bajo consideración; (3) Adjudicación; (4) Aceptación; (5) Condiciones Especiales; y (6) Condiciones Específicas.

Las ofertas de los licitadores fueron evaluadas por miembros de la Junta de Subastas, tomando en consideración el estricto cumplimiento con los requerimientos puntuales esbozados en el pliego de la subasta, el precio de los servicios a otorgarse y las recomendaciones recibidas. Así las cosas, el **31 de mayo de 2024**, la Junta de Subastas adjudicó **todos los renglones de la subasta** a la compañía Miguelito Asphalt, "en el mejor interés del Municipio".[1]

A raíz de lo anterior, Professional Asphalt instó un **primer recurso de revisión judicial (KLRA202400443)** sobre la subasta de referencia. Mediante *Sentencia* fechada **23 de agosto de 2024**, este Foro desestimó el caso por falta de jurisdicción y lo devolvió a la Junta de Subastas para que diera cumplimiento con los preceptos legales correspondientes y notificara una nueva adjudicación. En esa ocasión, se estableció que la Junta de Subastas no incluyó una síntesis de las propuestas sometidas y tampoco los factores o

---

[1] Apéndice, págs. 1-4.

criterios que se tomaron en consideración para adjudicar la subasta, así como las razones para no adjudicar a los licitadores perdidosos.

Con fecha del **3 de septiembre de 2024**, la Junta de Subastas notificó una **segunda adjudicación** y el **13 de septiembre de 2024** Professional Asphalt presentó un **segundo recurso de revisión judicial (KLRA202400505)**. El **27 de noviembre de 2024**, notificada el **5 de diciembre de 2024**, este Tribunal dictó una *Sentencia* que desestimó nuevamente el recurso por falta de jurisdicción. Ello, toda vez que **la segunda notificación de la Junta de Subastas también carecía de todos los requisitos implantados por la legislación y reglamentación vigente**. Se especificó que, por segunda vez, la mencionada notificación de adjudicación no incluyó los factores o criterios que se tomaron en cuenta para adjudicar la subasta y las razones para no adjudicar a los licitadores perdidosos.

Luego de analizar las propuestas de los licitadores, el **22 de noviembre de 2024**, la Junta de Subastas concernida emitió la *Adjudicación Enmendada* que hoy revisamos. Según adelantado, los miembros de la Junta de Subastas determinaron adjudicar la *buena pro* de la subasta a Miguelito Asphalt.[2] La Junta de Subastas coligió que todos los licitadores cumplieron con los requisitos mínimos requeridos para que sus propuestas fueran consideradas. A su vez, reveló lo siguiente:

- Los licitadores Professional Asphalt LLC, Super Asphalt Pavement Corp. y Puerto Rico Asphalt LLC, presentaron la Certificación de la Junta para la Inversión de la Industria Puertorriqueña, por lo que se consideró un descuento de 15% a los precios presentados en la oferta de estos licitadores.

- Considerando los precios con descuento de los licitadores que así correspondían, surge de la evaluación que en **los renglones 1, 2, 3, 12, 15, 16, 17, 18, que corresponden al trabajo de asfalto, el licitador Miguelito Asphalt, Inc. fue quien presentó la oferta con el precio razonable más bajo**.

---

[2] Se anejó a la notificación un resumen de los costos de las propuestas recibidas.

- Como parte de **las consideraciones en la evaluación de los miembros de la Junta de Subastas se encuentra el proceso del servicio principal que se está solicitando**. **El trabajo de asfaltar una calle, en la práctica, no se segmenta**. **Tomando en cuenta el proceso que se lleva a cabo en el Municipio no sería práctico ni razonable que dos licitadores diferentes realicen diferentes tareas en el proceso de asfaltar un área.** Siendo esto así se consideró el costo total, según los precios ofertados en los renglones, tomando como ejemplo asfaltar un área de 947.66 mts (LxA), siguiendo los procesos del Municipio; de esta manera se estaría evaluando todas las ofertas en igual de condiciones. (Énfasis nuestro).

Además, la Junta de Subastas enunció que, como resultado de su ejercicio de evaluación, el precio global[3] por asfaltar un área de 947.66 mts (LxA) por licitador sería el siguiente:

| Licitadores | Costos |
|---|---|
| Miguelito Asphalt, Inc | $7,565.10 |
| Super Asphalt Pavement, Corp | $17,715.05 |
| Puerto Rico Asphalt, LLC | $20,901.93 |
| PR Disposal 4 Contractor | $8,615.26 |
| Professional Asphalt, LLC | $17,018.28 |

La Junta de Subastas igualmente precisó que, considerando los costos ofertados, en los cuales el licitador Miguelito Asphalt resultó ser el razonablemente más bajo, así como el proceso establecido por el Municipio para realizar el trabajo solicitado, operaba en el mejor interés del ayuntamiento adjudicar la subasta de referencia a una sola compañía, entiéndase, Miguelito Asphalt.

En desacuerdo con la decisión emitida, Professional Asphalt recurre ante nos **por tercera ocasión** y en su escrito plantea que el ente administrativo cometió los siguientes errores:

Erró la Junta de Subastas al actuar sin jurisdicción al emitir una enmienda a la notificación de adjudicación de subasta que está siendo revisada por este Honorable Tribunal de Apelaciones en el caso número KLRA2024-00505.

Erró la Junta de Subastas al adjudicar a un postor que no es el más bajo, sin justificación alguna.

---

[3] Precio considerando un 15% de descuento por la tasa de preferencia.

A tenor con la Regla 7 (B)(5) del Reglamento del Tribunal de Apelaciones, este Foro puede "prescindir de términos no jurisdiccionales, específicos," escritos, notificaciones o procedimientos adicionales, "con el propósito de lograr su más justo y eficiente despacho…".[4] Ante ello, prescindimos de la comparecencia de la parte recurrida.

## II.

En el caso de los municipios, la subasta tradicional y el requerimiento de propuestas (*Request for Proposal*) realizada por la Junta de Subastas se encuentran gobernados por la Ley Núm. 107 del 14 de agosto de 2020, conocida como el *Código Municipal de Puerto Rico*, 21 LPRA sec. 7001 *et seq.*, según enmendada, (Ley Núm. 107-2020)[5] y el *Reglamento para la Administración Municipal de 2016* (Reglamento Núm. 8873)[6]. *PR Eco Park et al. v. Mun. de Yauco,* 202 DPR 525 (2019). El derecho de revisión judicial que poseen los licitadores se encuentra de igual manera regulado por dichos cuerpos normativos y la jurisprudencia interpretativa.

En lo concerniente al asunto ante nuestra consideración, el Artículo 2.040(a) de la Ley Núm. 107-2020, relacionado a las funciones y deberes de la Junta de Subastas, dispone que:

[…]

La adjudicación de una subasta será notificada a todos los licitadores certificando el envío de dicha adjudicación mediante correo certificado con acuse de recibo, o mediante correo electrónico, si así fue provisto por el licitador o licitadores. En la consideración de las ofertas de los licitadores, la Junta podrá hacer adjudicaciones por renglones cuando el interés público así se beneficie. **La Junta de Subasta notificará a los licitadores no agraciados las razones por las cuales no se le adjudicó la subasta.** Toda adjudicación tendrá que ser notificada a cada uno de los licitadores, apercibiéndolos del término jurisdiccional de diez (10) días para solicitar revisión judicial de la adjudicación

---

[4] 4 LPRA Ap. XXII-B, R. 7 (B)(5).
[5] Antes Ley Núm. 81-1991, según enmendada, conocida como la *Ley de Municipios Autónomos de Puerto Rico*, 21 LPRA sec. 4001 *et seq.*
[6] Reglamento Núm. 8873 del 19 de diciembre de 2016 de la Oficina del Comisionado de Asuntos Municipales, conocido como Reglamento para la Administración Municipal de 2016.

ante el Tribunal de Apelaciones, de conformidad con el Artículo 1.050 de este Código.[7]

21 LPRA sec. 7216.[8]

(Énfasis nuestro)

Por otro lado, el Reglamento Núm. 8873 detalla la información requerida en cada aviso de adjudicación de subasta o requerimiento de propuesta; a saber:

Sección 13: Aviso de Adjudicación de Subastas

(3) La notificación de adjudicación o la determinación final de la Junta, que se enviará a todos los licitadores que participaron en la subasta, debe contener la siguiente información:

a) nombre de los licitadores;

**b) síntesis de las propuestas sometidas;**

**c) factores o criterios que se tomaron en cuenta para adjudicar la subasta y razones para no adjudicar a los licitadores perdidosos;**

d) derecho a solicitar revisión judicial de la adjudicación o acuerdo final, ante el Tribunal de Apelaciones, y el término para ello, que es dentro del término jurisdiccional de diez (10) días contados desde el depósito en el correo de la notificación de adjudicación;

**e) fecha de archivo en auto de la copia de la notificación y la fecha a partir de la cual comenzará a transcurrir el término para impugnar la subasta ante el Tribunal de Apelaciones.**

Parte II, Secc. 13(3) del Reglamento Núm. 8873, *supra.* (Énfasis nuestro).

---

[7] La Ley Núm. 23-2023, añadió un inciso (f) al Artículo 1.050 de la Ley Núm. 107-2020. En lo que nos atañe, dicho inciso expone:

[...]

El Tribunal de Apelaciones revisará el acuerdo final o adjudicación de la Junta de Subastas, el cual se notificará por escrito y mediante copia por correo escrito regular y certificado a la(s) parte(s) afectada(s). La solicitud de revisión se instará dentro del término jurisdiccional de diez (10) días contados desde el depósito en el correo de la copia de la notificación del acuerdo final o adjudicación. La notificación deberá incluir el derecho de la(s) parte(s) afectada(s) de acudir ante el Tribunal de Circuito de Apelaciones para la revisión judicial; término para apelar la decisión; **fecha de archivo en autos de la copia de la notificación y a partir de que fecha comenzará a transcurrir el término.** La competencia territorial será del circuito regional correspondiente a la región judicial a la que pertenece el municipio. (Énfasis nuestro).

[8] Resulta pertinente señalar que la Ley Núm. 170 del 30 de diciembre de 2020 enmendó los incisos (a) y (e)(7) del Art. 2.040 de la Ley Núm. 107-2020, con el propósito de añadir como opción la notificación vía correo electrónico.

En *PR Eco Park et al. v. Mun. de Yauco,* supra, pág. 537, el Tribunal Supremo de Puerto Rico expresó que,

> ... **[P]ara que la notificación de adjudicación de la Junta de Subastas sea adecuada, esta tiene que cumplir con varios requisitos de carácter jurisdiccional**. Esto es, la notificación de la adjudicación de la Junta de Subastas solo será correcta si: (1) es por escrito; (2) es enviada a los licitadores por correo regular y certificado con acuse; (3) advierte a los participantes el derecho a solicitar la revisión judicial ante el Tribunal de Apelaciones; (4) indica que el término de diez días para ir en alzada es de carácter jurisdiccional; (5) señala, además, dos fechas fundamentales, a saber: **(i) la del archivo en auto de la copia de la notificación de adjudicación y (ii) la relacionada con el depósito de la notificación en el correo y que a partir de esta última es que se activa el plazo para acudir al Tribunal de Apelaciones.** (Énfasis nuestro).[9]

Conforme con el Art. 1.050 del Código Municipal, antiguo Art. 15.002(2) de la Ley de Municipios Autónomos, y con la Sec. 13 del Reglamento Núm. 8873, la fecha a partir de la cual comenzará a transcurrir el término para presentar un recurso de revisión judicial tiene que constar explícitamente en la notificación de la adjudicación. *PR Eco Park et al. v. Mun. de Yauco,* supra, págs. 537-538.

De otra parte, para que un tribunal pueda cumplir con su obligación constitucional y asegurar que el derecho a obtener la revisión judicial de una decisión de una agencia sea efectivo**, es imprescindible exigir que ella esté fundamentada, aunque sea de forma sumaria.** *Puerto Rico Asphalt v. Junta,* 203 DPR 734 (2019) (Sentencia), citando a *L.P.C. & D., Inc. v. A.C.,* 149 DPR 869, 877–888 (1999) (Énfasis nuestro). Además, una notificación fundamentada permite que los tribunales puedan "revisar efectivamente los fundamentos para determinar si la determinación de la junta ha sido arbitraria, caprichosa o irrazonable", más aún

---

[9] Es ineludible consignar que a partir de ese instante se activa el plazo jurisdiccional de diez días para solicitar la revisión judicial al foro apelativo intermedio. *PR Eco Park et al. v. Mun. de Yauco,* supra, pág. 538.

en el caso de subastas públicas, en virtud de las cuales se desembolsan fondos públicos. *L.P.C. & D., Inc. v. A.C.*, supra, a la pág. 879.

En armonía con lo anterior, recordemos que el derecho a cuestionar una subasta adjudicada es parte del debido proceso de ley. Por tanto, resulta indispensable que la notificación sea apropiada a todas las partes que les asiste tal derecho. La correcta y oportuna notificación de una adjudicación de una Junta de Subastas es un requisito *sine qua non* de un ordenado sistema *cuasijudicial.* Su omisión puede conllevar graves consecuencias. Por ende, la notificación defectuosa priva de jurisdicción al foro revisor para entender sobre el asunto impugnado. Lo anterior tiene el efecto de que el recurso que se presente ante un tribunal de mayor jerarquía sería prematuro. *PR Eco Park et al. v. Mun. de Yauco,* supra, págs. 538-539.

Por último, como es sabido, la falta de jurisdicción sobre la materia es una defensa irrenunciable, la cual puede ser planteada a petición de parte o el tribunal *motu proprio* y en cualquier etapa de los procedimientos, incluso en fases apelativas. Los tribunales tenemos el deber de evaluar este tipo de planteamiento de forma rigurosa, toda vez que repercute sobre nuestra facultad para adjudicar la controversia. *PR Eco Park et al. v. Mun. de Yauco,* supra.

**III.**

En el caso ante nuestra consideración, Professional Asphalt arguye que la *Adjudicación Enmendada*, notificada por la Junta de Subastas del Municipio Autónomo de Cataño el 22 de noviembre de 2024 no cumple con los preceptos legales y reglamentarios aplicables. Aduce que la Junta de Subastas determinó adjudicar nuevamente la subasta a Miguelito Asphalt sin proveer explicación sobre las bases de su decisión. Acentúa que, peor aun, la referida notificación enmendada crea mayores dudas sobre los procesos

seguidos por el Municipio. Además, entiende que la Junta de Subastas actuó sin jurisdicción al enmendar la adjudicación, toda vez que no se había emitido el mandato en el caso KLRA202400505 devolviéndole la jurisdicción.

Professional Asphalt esboza que la Junta de Subastas adjudicó a un postor que, no solamente no fue el más bajo, sino que dicha determinación no fue debidamente justificada. Subraya que las cifras que se incluyeron en la adjudicación enmendada no se sustentan y que dicho mecanismo de evaluación no formó parte de los pliegos de licitación. Alega que no es cierto que el licitador agraciado, Miguelito Asphalt, fue el más económico, puesto que, en los trabajos de asfalto que se relacionan con los renglones número 2, 6, 7, 8, 9, 10 y 11, Miguelito Asphalt no resulta ser más bajo que la parte aquí recurrente.

En armonía con lo anterior, detalla que, según la tabla comparativa de precios preparada por la Junta de Subastas, surge una diferencia marcada en el segundo renglón entre dos (2) licitadores y los restantes. Por tanto, cursó una comunicación al Municipio alertando que el precio de Miguelito Asphalt solo incluía la mano de obra, sin el precio del material asfáltico.[10] En esa dirección, es su contención que: (1) si ese es el caso, el precio ofertado por Miguelito Asphalt es mayor a su oferta y (2) si ese no es el caso, no es posible que el trabajo incluido en el renglón número 2 incluya todo lo que su descripción exige. Ello, porque, al considerar el añadir el precio del asfalto en la licitación de Miguelito Asphalt para el renglón número 2, tal como cotizó en el renglón número 10, el resultado es que su precio por tonelada es mayor a la suya. Igualmente menciona que el análisis matemático de la Junta de

---

[10] Apéndice del recurso, págs. 65-66.

Subastas realizando un ejemplo de asfaltar un área de 947.66 mt$^2$ no se sustenta en los datos de los precios unitarios.

De otro lado, manifiesta que, si para el Municipio los renglones primordiales son los de asfalto, utilizó una combinación selectiva de otros renglones para los resultados que indicó. Así las cosas, discute que la ausencia total de explicación de cuál fue el ejercicio realizado por la Junta de Subastas, así como los criterios para definir qué cantidades de cada renglón utilizó, colocan su adjudicación nuevamente ante una que deja huérfano al lector de conocer en qué consiste el análisis, de forma que permita a los demás licitadores cuestionar adecuadamente su determinación. Sostiene que, de prevalecer la adjudicación concernida, se vulneraría su debido proceso de ley y se mantendría una decisión arbitraria y caprichosa.

Analizado el expediente ante nuestra consideración, colegimos que procede la desestimación del recurso de referencia por falta de jurisdicción. Por consiguiente, este Foro debe devolver el caso a la Junta de Subastas del Municipio Autónomo de Cataño para que, de una vez y por todas, notifique una adjudicación de forma correcta. Resulta alarmante y preocupante que, por tercera ocasión, la referida Junta de Subastas haya quebrantado los preceptos legales aplicables. Aunque en la *Adjudicación Enmendada* la Junta de Subastas incluyó parte del contenido requerido por nuestro ordenamiento jurídico, según instruido en dos (2) ocasiones por este Tribunal, aún existen deficiencias fundamentales que inciden sobre nuestra jurisdicción apelativa.

Del expediente se desprende que la Junta de Subastas no fundamentó la adjudicación de la subasta al licitador agraciado, Miguelito Asphalt conforme establece nuestro ordenamiento jurídico. *Puerto Rico Asphalt v. Junta,* supra; *L.P.C. & D., Inc. v. A.C.,* supra. La Junta de Subastas expresó que en su evaluación tomó en

consideración el servicio principal que se estaba solicitando, por lo que cumplió con esbozar los factores o criterios que se tomaron en cuenta para adjudicar la subasta. Además, precisó que todos los licitadores cumplieron con los requisitos mínimos requeridos para que sus propuestas fueran consideradas, pero **no discutió las razones para no adjudicar a los perdidosos**. Al mismo tiempo, a pesar de que incluyó en un anejo un resumen de los costos de las propuestas recibidas por todos los licitadores, luego de un análisis del caso y una circunspección de su complejidad, nos lleva a concluir **que dicho anejo no se puede catalogar como una síntesis de las propuestas sometidas.**

Por otro lado, también surge del aviso enmendado de adjudicación que la Junta de Subastas **no señaló la fecha en que se archivó en los autos el original de la notificación del aviso y no especificó la fecha en que fue depositada en el correo**.

Como vemos, el incumplimiento por parte de la Junta de Subastas provocó que, de nuevo, la notificación emitida no se pueda considerar como una adecuada, válida y efectiva, pues para ello resultaba indispensable que se plasmara toda la información que nuestro estado de derecho requiere. Lo anterior incide sobre la facultad que ostentamos para ejercer nuestra función revisora cabalmente y sobre el término que posee la parte recurrente para presentar un recurso de revisión judicial.[11]

Debido a la inobservancia de los postulados que gobiernan el asunto ante nuestra consideración, nos vemos precisados a desestimar el recurso de epígrafe por falta de jurisdicción. Devolvemos el caso a la Junta de Subastas del Municipio Autónomo de Cataño para que emita un dictamen que se atempere a los requerimientos instituidos por nuestro ordenamiento jurídico y lo

---

[11] Más aún, la Junta de Subastas indica que su análisis se circunscribe a ciertos renglones exclusivamente. Sin embargo, omite el razonamiento que lo lleva a ello.

notifique nuevamente a los licitadores. Solo así comenzará a transcurrir el término para que la parte recurrente inste su recurso y, consecuentemente, podamos revisar y resolver en los méritos de la causa. *PR Eco Park et al. v. Mun. de Yauco*, supra; *Torres Prods. v. Junta Mun. Aguadilla*, 169 DPR 886, 894 (2007); *L.P.C. & D., Inc. v. A.C.,* supra.

Ante lo enunciado, invitamos a la Junta de Subastas del Municipio Autónomo de Cataño que, al momento de pronunciar una nueva notificación de adjudicación de subasta, lo haga en estricto cumplimiento con los requisitos que establecen la ley y la jurisprudencia aplicables, conforme con el debido proceso de ley. Llama poderosamente la atención la recurrencia de la adjudicación de la subasta de manera errónea. Esta acción ocasiona gastos significativos para los licitadores perdidosos y más aún para el erario.

### IV.

Por los fundamentos antes expuestos, se desestima el recurso de referencia por falta de jurisdicción, por haber sido presentado prematuramente. Véase, Regla 83 (C) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B R. 83(C).

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaria.

La Jueza Rivera Marchand concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones